JOHN V. RICE, Administrator of JAMES RICE, Deceased,

*vs.*

WILLIAM G. PENNYPACKER, Executor, and SUSAN Z. HOLLINGSWORTH, Devisee of ACHILLES HOLLINGSWORTH, Deceased; and AMOR H. HARVEY.

New Castle, Feb. T. 1875.

*Resulting trusts; requisites to establish; examination of adverse party.*

1. To establish a resulting trust in land purchased and deeded in the name of another, it must be clearly proved that the person seeking to establish the trust paid the purchase money, or incurred a liability for its payment, at the time and as a part of the original transaction of purchase.

2. A subsequent payment for the land by the person seeking to establish a trust therein, accompanied by possession or use of the land by him, will vest an equitable estate in him; and such payment, under an agreement to take the real estate from the person in whose name it was originally purchased, may, under certain circumstances, create an express trust in respect to it.

3. Where a member of a firm bid in certain real estate at sheriff's sale,. and paid the sheriff a portion of the purchase price, and arranged the balance by substituting securities in his own name on the land in lieu of liens thereon which were payable out of the purchase-money, and received a deed in his own name; and thereafter a portion of such real estate was used by the firm in its firm business; and the evidence showed that the amount paid down by such purchasing member, together with items of interest which accrued on the securities given by him for the balance of the purchase price, were drawn from the firm funds, but that all such sums were charged against the purchasing member as a debt from him to the firm,—*Held*, that neither a resulting nor an express trust was established in favor of the firm.

4. The Act of February 18, 1859, providing for the examination of an adverse party, applies only to a party adverse in interest; and when the party sought to be examined is merely nominally adverse to the examining party in the suit, but not actually adverse in interest, Rule 46 of the court of chancery applies; and, to render his testimony admissible, the party applying to examine him must first file the affidavit required by that rule, stating that he is a material witness, and not interested in the matter to which he is to be examined.

BILL TO ESTABLISH A RESULTING - TRUST, AND FOR AN ACCOUNT.—The case as presented by the pleadings, and the facts disclosed by the evidence, are sufficiently stated in the opinion.

*George H. Bates* and *Edward G. Bradford Jr.* for the complainant.

*Samuel M. Harrington*, for the executor and devisee of Achilles Hollingsworth, deceased, defendants:

The principles of law relating to resulting trusts; to the kind and strength of the evidence necessary to establish them; to the impolicy and dangerous tendency of permitting such trusts to be established by parol evidence; to the effect of lapse of time between the purchase and the attempt to set up the trust; to the fact of delay until the death of the legal owner,—are clearly stated by *Chancellor* Bates in *Harvey* v. *Pennypacker*, 4 Del. Ch. 459, and are well established in numerous cases cited in the American note to *Dyer* v. *Dyer*, 1 Lead. Cas. in Eq. 165.

Courts of equity not only adopt the twenty years' bar, but.

also, from considerations of public policy and the repose and security of written titles, a much shorter period is erected into a bar, especially in claims set up after the death of the legal holder. *Beckford* v. *Wade*, 17 Ves. Jr. 88; *Peebles* v. *Reading*, 8 Serg. & R. 484; *Freeman* v. *Kelly*, 1 Hoffm. Ch. 90; *McKnight* v. *Taylor*, 42 U. S. 1 How. 161 (11 L. ed. 86); *Bowman* v. *Wathen*, 42 U. S. 1 How. 193 (11 L. ed. 98); *Carey* v. *Callan*, 6 B. Mon. 44; *Enos* v. *Hunter*, 9 Ill. 211; *Strimpfler* v. *Roberts*, 18 Pa. 283; *Underwood* v. *Conortown*, 2 Sch. & L. 71; *Hovenden* v. *Annesley*, Id. 628; *Elmendorf* v. *Taylor*, 25 U. S. 10 Wheat. 152 (6 L. ed. 289).

As to the danger of parol evidence, see *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Botsford* v. *Burr*, 2 Johns. Ch. 406; *Baker* v. *Vining*, 30 Me. 121; *Lloyd* v. *Carter*, 17 Pa. 216; *Faringer* v. *Ramsay*, 2 Md. 365.

The trust must be coeval with the original transaction of purchase. *White* v. *Carpenter*, 2 Paige, 238; *Rogers* v. *Murray*, 3 Paige, 390; *Lloyd* v. *Carter*, 17 Pa. 216.

The evidence must be clear, full, and satisfactory. *Gascoigne* v. *Thwing*, 1 Vern. 366; *Dorsey* v. *Clarke*, 4 Harr. & J. 555; *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Snelling* v. *Utterback*, 1 Bibb, 609.

A loan creates no resulting trust. *Aveling* v. *Knipe*, 19 Ves. 442; *Le Fevre's App.* 69 Pa. 122.

A general contribution toward the purchase money is not a contribution of an aliquot part, and does not satisfy the requirement as to payment. *Wheeler* v. *Kirtland*, 8 C. E. Green, 22; *Olcott* v. *Bynum*, 84 U. S. 17 Wall. 44 (21 L. ed. 570).

Parol evidence to show a trust from the mean circumstances of the pretended owner of the real estate should be such as to make it impossible for him to be the purchaser. *Willis* v. *Willis*, 2 Atk. 71.

As against one purchasing lands in his own name and taking the legal title, a trust or interest in favor of a third person can be set up only in one of two modes, viz.: either as a resulting trust, by operation of law, from the actual payment

of the purchase money; or, where the claimant has not paid the purchase money, there must have been a contract in writing sufficient within the Statute of Frauds. *Harvey* v. *Pennypacker*, 4 Del. Ch. 485. See also *Bartlett* v. *Pickersgill*, 1 Eden, 515; *Kisler* v. *Kisler*, 2 Watts, 323; *Robertson* v. *Robertson*, 9 Watts, 32; *Jackman* v. *Ringland*, 4 Watts & S. 149; *Smith* v. *Smith*, 27 Pa. 180; *Sharp* v. *Long*, 28 Pa. 433.

The complainant is barred by laches for obtaining the relief he seeks. *Spring* v. *Gray*, 5 Mason, 523; 1 Story, Eq. Jur. § 64 A; Story, Partn. § 233, note; *Sterndale* v. *Hankinson*, 1 Sim. 393; *Martin* v. *Heathcote*, 2 Eden, 169; *Acherley* v. *Roe*, 5 Ves. 565, note B; *Barber* v. *Barber*, 18 Ves. 286; *Ellison* v. *Moffatt*, 1 Johns. Ch. 46; *Mooers* v. *White*, 6 Johns. Ch. 369; *Robinson* v. *Hook*, 4 Mason, 150; *Tatam* v. *Williams*, 3 Hare, 347; *Short* v. *McCarthy*, 3 Barn. & Ald. 628; *Granger* v. *George*, 5 Barn. & C. 149; *Sherwood* v. *Sutton*, 5 Mason, 143; *Troup* v. *Smith*, 20 Johns. 33; *Ogden* v. *Astor*, 4 Sandf. 311.

*Samuel A. Macallister*, for A. H. Harvey, defendant.

THE CHANCELLOR.—About the 22d day of January, 1842, James Rice succeeded by purchase to the interest of Jacob Pearson in the firm of Pearson, Hollingsworth, & Harvey. From that day until some time in the year 1854 there existed a firm by the name of Hollingsworth, Harvey, & Co. Achilles Hollingsworth, Amor H. Harvey, and James Rice composed this firm as partners in trade as machinists and blacksmiths. The precise day of the dissolution of the firm has not been proved, although it is safe to assume, in view of all the facts proved, that the dissolution occurred early in the month of January, 1854, by the withdrawal of James Rice. The business was continued by Achilles Hollingsworth and Amor H. Harvey until some time in the year 1865, under the same name and style of Hollingsworth, Harvey, & Co., when the copartnership was dissolved by the death of Achilles Hollingsworth. On the 18th day of August, 1849, all the real estate

of a certain firm, known as Hollingsworth & Teas, composed of James Hollingsworth and Joseph Teas, was sold on execution process by Isaac Grubb, then sheriff of New Castle County, the aggregate amount of sales being $10,040. The firm of Hollingsworth & Teas prior to said sale was indebted to the firm of Harvey, Hollingsworth, & Co. in a certain judgment in the Superior Court at New Castle, being No. 424, May Term, 1848, the amount whereof was $2,650, and also to the said James Rice in his individual capacity in two judgments in the said court,— to wit, No. 425 to May Term, 1848, being for the real debt of $1,500; and No. 232 to November Term, 1848, the real debt whereof was $1,200.

There also existed prior liens against the real estate of the said James Hollingsworth and Joseph Teas, and Hollingsworth & Teas, amounting to upwards of $10,000. The sale made by the sheriff, of this real estate, was under a certain writ of *levari facias* on a mortgage made by James Hollingsworth and wife in favor of, and held by, the Wilmington Savings Fund Society, to secure a debt of $2,600, and also under a writ of *venditioni exponas* following a writ of *fieri facias* issued upon the judgment of James Rice v. Hollingsworth & Teas, for $1,200. Achilles Hollingsworth, at the sale of said real estate, became the purchaser of the same, and received the sheriff's deed therefor.

The bill of complaint charges that the firm of Hollingsworth, Harvey, & Co., of which James Rice was a member, by and through Achilles Hollingsworth, and by and through him only as the agent of that firm, bought all of the real estate at the said sheriff's sale, for the use and benefit of the firm of Hollingsworth, Harvey, & Co., and for no other purpose or purposes.

The bill also charges that all of the purchase money paid for the said real estate came wholly, directly, and absolutely from the partnership funds of the firm of Hollingsworth, Harvey, & Co., and that it was purchased in pursuance of an agreement between the partners for their common benefit, in order to cover the claims of the firm of Hollingsworth,

Harvey, & Co. upon the said judgment for the said sum of $2,600, and of James Rice upon one or both of the two said judgments together, amounting to $2,700; for the reason that, in view of its availability for the purposes of their business, and the existence of the said liens, apart from other considerations, the said real estate was worth more to the firm of Hollingsworth, Harvey, & Co. than the price at which it was struck off at the said sheriff's sale.   It appears that a portion of this real estate was used by the firm, during its existence, in their business as machinists and blacksmiths, and that certain alterations were made by them in the portion so used, in order to adapt it to their business; and that, after the dissolution of said firm, it continued to be used for a like purpose by the firm composed of Hollingsworth & Harvey.   The bill states other facts and circumstances with a view of establishing a common interest among the partners in the said real estate, and declares that the firm of Hollingsworth, Harvey, & Co. was, at the time of the withdrawal of James Rice therefrom, largely indebted to the said James Rice, and prays that Susan Z. Hollingsworth, the devisee of the said Achilles Hollingsworth, may be decreed to hold the real estate in trust for the use of the members of the late firm of Hollingsworth, Harvey, & Co. and the representatives of any deceased partner or partners; that the real estate may be decreed to be sold by a trustee to be appointed by the court for that purpose; that Susan Z. Hollingsworth may be decreed to convey said real estate to said trustee; and that the equitable share of James Rice therein may be paid to the complainant as his administrator.   The bill also prays that an account may be taken of the whole amount which is due to the estate of the said James Rice, for and on account of the amount of money advanced by the said James Rice to the firm of Hollingsworth, Harvey, & Co., evidenced by certain memorandum checks amounting to the sum of $13,539.86, and for the amount of the private account of the said James Rice against said firm, amounting to the sum of $4,175.88, and also of the amount due to the estate of the said James Rice on account of his

interest as partner in the business of the firm, and also the amount due his estate up to the present time, for his share of the rents and profits of said real estate as equitable tenant in common thereof; and that the aggregate amount so found due, with interest thereon to the present time, may be decreed to be paid to the complainant as his administrator, out of the proceeds of the sale of the said partnership real estate, or out of any other property which may be found subject to the complainant's claim.

The answer of Amor H. Harvey, one of the defendants, although drawn out at length and with great particularity, is, in substance and effect, a confession of the complainant's bill.

The joint and several answer of William G. Pennypacker and Susan Z. Hollingsworth, the other two defendants, after the admission of the existence of the alleged copartnership, in substance and effect denies every material charge of the bill upon which the complainant seeks relief.

These defendants positively and expressly deny that the purchase money paid for the said real estate came wholly, directly, and absolutely from the partnership funds of the firm of Hollingsworth, Harvey, & Co., and they allege that the same did come from the individual funds of Achilles Hollingsworth and on his own individual account; the manner of which is distinctly set forth in their answer, or appears by the evidence.

If the complainant is entitled to the relief he seeks, it must be for the reason that he has proved clearly, fully, and satisfactorily in the cause, that the firm of Hollingsworth, Harvey, & Co., of which James Rice was a member, actually paid the purchase money of the real estate conveyed by the sheriff to Achilles Hollingsworth, or incurred a liability for its payment; and that such payment or liability for payment was a part of the original transaction of purchase, and not pursuant to any subsequent agreement or arrangement between the parties,—it being well established that a resulting trust must be coeval with the purchase, and must attach to the legal estate when it is taken under the deed; or, secondly, he

must in like manner have proved that at some time subsequent to the original purchase it was agreed between the firm of Hollingsworth, Harvey, & Co. and Achilles Hollingsworth, that the firm should take the real estate, and that, in pursuance of said agreement, the firm did in fact subsequently pay for it. Such subsequent payment, if accompanied by possession or use of the real estate, would vest an equitable estate in the firm ; and such payment under an agreement to take the real estate might, under certain circumstances, have created an express trust in respect to it. These principles were clearly announced by my predecessor in office, in the case of Amor H. Harvey, one of the defendants, against the other two defendants in this cause ( 4 Del. Ch. 445 ), and were not questioned in the argument of the present cause.

I therefore shall proceed to the consideration of the testimony with a view of ascertaining whether the complainant has furnished the requisite proof to entitle him to the relief he seeks. So far as the title to the real estate is involved in this controversy, the defendants, of course, rely upon the sheriff's deed to Achilles Hollingsworth. That title must remain absolutely valid, and be conclusive against the claim of the complainant, so long as proof less than clear, full, and satisfactory is wanting to establish an equitable interest in it by those claiming an interest therein as heirs or representatives of James Rice. The burden of proof to establish an equitable interest in someone else, contrary to the legal title which Susan Z. Hollingsworth has in it as the devisee of Achilles Hollingsworth, is upon the complainant. In addition to other evidence which the complainant furnishes and which will be hereafter considered, he has examined Amor H. Harvey, one of the defendants, as a witness, whose testimony, if it is admissible and is regarded as true, tends strongly to establish the complainant's case. Is that testimony admissible according to the rules of law and the practice of this court ? Amor H. Harvey is a party to the record in this cause. His examination was taken before the examiner without the party applying for the same having first filed an affidavit that

he was a material witness, and was not interested in the matter to which he was to be examined, according to the 46th Rule of this court. Objection was made before the examiner to the taking of the testimony for noncompliance with the rule. The examiner overruled the objection, doubtless upon the view which he took of the Act of the General Assembly of February 18, 1859, entitled "An Act in Reference to the Competency of Certain Persons as Witnesses;" and the admissibility of this testimony was urged by the solicitors of the complainant, and denied by the solicitor of the defendants, in view of this Act, at the hearing of this cause in October last. I then ruled the testimony inadmissible. That Act provides that a party to the record in any action or judicial proceeding, or a person for whose immediate benefit such proceeding is prosecuted or defended, may be examined as if under cross-examination, at the instance of the adverse party or any of them, and for that purpose may be compelled—in the same manner, and subject to the same rules of examination, as any other witness—to testify; but the party calling for such examination shall not be concluded thereby, but may rebut his testimony by other evidence. Section 2 of the Act provides that a party proposing to examine a party adverse in interest may have the same process and means of compelling attendance and response as the law provides in the case of ordinary witnesses. The party, therefore, to the record, who may be compelled to testify at the instance of the adverse party, must be a party to the record, adverse not simply in his nominal character as plaintiff or defendant, but adverse in interest to the party at whose instance he is sought to be examined. If his substantial interest is the same as that of the party seeking his examination, although he may in fact be on opposite sides of the suit on the record, he cannot be examined as a witness. It did not appear to me, when the objection to the testimony was made, that Amor H. Harvey was a party adverse in interest to the complainant. To prevent delay, however, in the final hearing of the cause, it was agreed by the solicitors of the complainant and respondents that the affidavit required

by the 46th Rule of this court should be then filed *nunc pro tunc*, and Harvey's testimony should stand subject to objection on the ground of his interest in the matter to which he was examined, the affidavit of the complainant to the contrary notwithstanding.

I have no doubt that the complainant conscientiously made that affidavit, and I do not wish to be understood as reflecting at all upon the integrity of Mr. Harvey as a witness in deciding, as I do, that he is not a competent witness in this cause for any purpose, either under the Act of 1859 or the 46th Rule of this court. He has an interest in this cause in the matter to which he was examined,—an interest of like character with that of the complainant, who has caused him to be examined, and not an interest adverse to that of the complainant. As stated by the solicitors of the complainant, no decree is sought against Mr. Harvey. It is apparent, from the whole case, that the substantial matter in controversy in this cause is the title to the real estate purchased by Achilles Hollingsworth at the sheriff's sale hereinbefore referred to, and the fact that the complainant seeks to establish the indebtedness of the firm of Hollingsworth, Harvey, & Co. to James Rice, to the amount of the memorandum checks and the account of James Rice against the firm, does not affect the question of the competency of Mr. Harvey as a witness; because, if these claims should be established, it would be to the interest of Mr. Harvey to increase the assets of the firm by the addition thereto of the real estate in controversy, for the purpose of providing a fund for the discharge of the firm's indebtedness.

The incompetency of Mr. Harvey as a witness would be still further apparent if these claims should prove to be claims against the firm of Hollingsworth, Harvey, & Co. composed of Achilles Hollingsworth and Amor H. Harvey, and not against the firm of Hollingsworth, Harvey, & Co. composed of Achilles Hollingsworth, Amor H. Harvey, and James Rice. I shall further consider these claims at a subsequent stage of this investigation. While injustice may possibly be done by the exclusion of Mr. Harvey's testimony, yet its admission,

under the circumstances and proofs in the cause, would be clearly repugnant to the settled principles of law governing the subject of evidence.    The evidence of Joseph Teas, Ann Billany, Amos C. Brinton, Joshua S. Valentine, Letitia V. Patton, and James Hollingsworth, the other witnesses examined by the complainant, in relation to facts supposed to have a bearing on the question of title to the real estate in controversy, if not wholly immaterial, is far from being clear, full, and satisfactory, and is too unimportant to require extended consideration.    It is sufficient to say that an admission of its absolute verity—and there is no reason to impugn the sincerity of these witnesses—could have no effect upon the result of this cause.    The important evidence in behalf of the complainant is that furnished by an inspection of the books of the firm of Hollingsworth, Harvey, & Co. and the explanation of the entries contained in those books by the witnesses examined by the complainant as experts in the cause.    In reference to the purchase of this real estate, and the history of the security of the purchase money, and the controversy in reference to the payment of that security, I adopt the following extract from the opinion of *Chancellor* Bates in the case of Amor H. Harvey *v.* William G. Pennypacker, executor of Achilles Hollingsworth, deceased, and Susan Z. Hollingsworth, hereinbefore referred to :

" The purchase money was $10,040.    Of this sum 10 per cent, or $1,004, was received by the sheriff from Hollingsworth.    Some expenses connected with the purchase, added to the 10 per cent, made $1,083.38, which was the sum actually paid upon the property at the time of purchase.    The whole real estate purchased was, before the purchase, subject to sundry liens to which the purchase money was applicable, but no money over and above the 10 per cent was in fact paid to the sheriff and applied to the liens.    Instead thereof, Hollingsworth on the 28th of December, 1849, substituted his own bonds with mortgages of the several premises purchased, in lieu of the liens as they stood in priority, up to the

.Opinion: discussion of evidence.

amount of the purchase money—$10,049.64. The bonds and mortgages thus given by Hollingsworth were as follows:

| | | |
|---|---|---|
| 1. To The Wilmington Savings Fund Society for | $2,400 | 00 |
| 2. " Ann Billany for | 700 | 00 |
| 3. " The Delaware Fire Insurance Company | 450 | 00 |
| 4. " The Farmers' Bank, afterwards assigned to the Savings Fund Society for | 2,100 | 00 |
| 5. " McDaniel & Harvey, afterward assigned to Jesse Lane for | 1,800 | 00 |
| 6. " John Rice, a judgment bond for | 1,595 | 64 |
| , Total | $9,045 | 64 |

"There was also a mortgage of $600 of Teas and wife to the Wilmington Fire Insurance Company, covering part of the real estate; but the premises covered by it were sold subject to it, and hence it followed the property, and no account was taken of it in settling for the purchase money.

"Of the securities thus given, there were paid off in Hollingsworth's lifetime,—by whom is a point in issue,—the following:

| | | |
|---|---|---|
| Ann Billany's mortgage for | $ | 700 00 |
| On account of the McDaniel & Harvey mortgage for $1,800, held by Lane | | 800 00 |
| The Rice judgment for | | 1,595 64 |
| Total | | $3,095 64 |

"After the death of Hollingsworth there were paid on these securities, out of his estate,—as to which payments there is no dispute,—the following sums, viz.:

| | | |
|---|---|---|
| The Delaware Fire Insurance Company mortgage for | $ | 450 00 |
| On account of the Farmers' Bank mortgage for $2,100, held by Savings Fund | | 500 00 |
| And the balance due on the McDaniel & Harvey mortgage of $1,800 | | 1,000 00 |
| Total | | $1,950 00 |

"There remains yet unpaid:

| | | |
|---|---|---|
| The Wilmington Savings Fund mortgage for | $2,400 | 00 |
| Balance due on the Farmers Bank mortgage, also held by the Savings Fund | 1,600 | 00 |
| Total unpaid | $4,000 | 00 |

" The controversy as to who paid the purchase money can of course have no application to the balance of $4,000 still unpaid, nor to the $1,950 paid out of Hollingsworth's estate since his death, making in all $5,950. The claim is that the firm paid the residue of the purchase money, embracing 10 per cent, or $1,004, and the several sums amounting to $3,095.64, which were applied in Hollingsworth's lifetime to the securities given for the purchase money. Connected with this is also the claim that the firm kept up the interest on all the securities until Hollingsworth's death; from all which is deduced, by complainant's solicitors, the conclusion that the purchase money, though from necessity secured in the name of Hollingsworth, he holding the legal title, was in fact the debt of the firm.

" It is true that a considerable portion, though (as I am obliged to conclude) not all, of the payments made during Hollingsworth's lifetime, were drawn from the assets of the firm. The 10 per cent paid to the sheriff, together with other small expenses incurred in the purchase, making in all $1,083.38, though settled by Hollingsworth as the purchaser, was drawn from the firm. The payments of interest from time to time on the securities given by Hollingsworth for the unpaid purchase money were also, for the most part, made by checks of the firm drawn and used by Hollingsworth. So also some portions of the principal of these securities were paid in Hollingsworth's lifetime from the partnership funds. Mrs. Billany's mortgage for $700 was thus paid in full, and $800 was applied out of the partnership's funds to the McDaniel & Harvey mortgage, assigned to Lane."

The entries upon the books of the firm in respect to this real estate, extending from about the date of its purchase to nearly the period of Achilles Hollingsworth's death, are very numerous; and experts have been examined on both sides to ascertain the correct meaning of those entries. Bookkeeping has been treated by the respective solicitors as a science, and persons presuming to be familiar with it have, in about equal numbers, testified differently in respect to the true construc-

tion of these book entries. ⁷ I select the following from the mass of entries as descriptive of the whole:

*Daybook*, 1849.

Dec. 31. Achilles Hollingsworth (for real estate)_____Dr.
To Cash for ten hundred and four dollars, which he paid to Isaac Grubb, sheriff, in Oct. last, being ten per cent of the purchase money on the property late of James Hollingsworth and Joseph Teas, of which he purchased at sheriff's sale in August last_____, $1,004 00

For ten dollars paid interest on the above account for 60 days__   10 00

For eleven $\frac{50}{100}$ dollars paid Thomas L. Mehaffy, tax against Hollingsworth & Teas property_____   11 50

For sundry expenses to New Castle_____    3 00

Three dollars paid Isaac Hollingsworth for fastening up shop__    3 00

Nine $\frac{26}{100}$ paid Insurance Company, Oct. 14_____    9 26

Two $\frac{12}{100}$ dollars paid prothonotary_____    2 12

Twenty dollars paid to Mrs. Ann Billany for interest on bond__   20 00

$1,083 38

Cash Dr. to Achilles Hollingsworth (for real estate) for (dollars received) from him for money returned to him by Isaac Grubb, at settlement, for twelve $\frac{50}{100}$ dollars received of, for rent of house in Third Street_____   12 50

*Page 1041, Daybook D.*

Jan. 17, 1850. A. Hollingsworth (for real estate) Dr. To cash____
For thirty dollars paid interest to Mrs. Billany, on account____   30 00

Jan. 31, 1850. A. Hollingsworth for real estate Dr. To cash for four hundred and twenty-one dollars and twenty hun dollars paid this day to Jonas Pusey for interest on James Hollingsworth's bond of $2,400, or up Dec. 28, 1849, and Joseph Teas' bond of $600 up to Feb. 5, 1850 _____   421 20

Feb. 1. A. Hollingsworth for (real estate) Dr. for forty-five 39 hun. paid for labor taking down old machinery at shop____   45 39

Feb. 9. Achilles Hollingsworth (for real estate) Dr. to cash for twenty-eight $\frac{14}{100}$ dollars paid this day wages to hands for work at shops_____   28 14

1850.  *Daybook.*

May 14. Achilles Hollingsworth (for real estate) Dr. to cash for fifty-three $\frac{85}{100}$ hundred dollars, paid to the Wilmington Fire Insurance Company, interest on James Hollingsworth's bond and for entering up mortgage _____   53 80

For seven $\frac{25}{100}$ hun. dollars for recording deeds_____    7 25

Achilles Hollingsworth for real estate, Dr. to cash. For cash paid at sundry times for carpenters, labor, etc., at shops while repairing and altering shops_____   534 26

Opinion: evidence from firm books.

June 16. Achilles Hollingsworth for real estate Dr. to bills payable for our note dated 4th inst. at 3 months in favor of Jacob Bare for city tax, sixty-nine $\frac{83}{100}$ hundred dollars.... 69 83

July 12. Achilles Hollingsworth for real estate, Dr. to cash for ninety dollars to pay interest on his own bond and J. Teas' bond at Savings Society.................................. 90 00

July 25. A. Hollingsworth for real estate, Dr. to cash. For cash paid interest on James Hollingsworth's bond, and also on his own bond up to June the 28th ult..................... 233 89

Aug. 2. A. Hollingsworth for real estate, Dr. to cash for twenty-one dollars paid Mrs. Billany................................ 21 00

Aug. 16. Sundries, Dr. to McDaniel & Harvey. A. Hollingsworth for real estate, fifty five $\frac{52}{100}$ hun. dollars' interest allowed them on their bond ............................. 55 52

Oct. 28. A. Hollingsworth for real estate, Dr. to cash, thirteen $\frac{50}{100}$ hun. dollars paid interest to Delaware Fire Insurance Company ...................................................... 13 50

Nov. 26. A. Hollingsworth for real estate, Dr. to cash, for two hundred ten $\frac{71}{100}$ hun. dollars paid to George C. Gordon, attorney on Jeremiah W. Duncan's mortgage against James Hollingsworth and Joseph Teas, being in full of principal and interest up to this date with said bond, except four hundred dollars, which is assigned to Robert E. Pool ...... 210 71

*Daybook*, 1851.

Jan. 29. A. Hollingsworth for real estate, Dr. to cash for fifty-four dollars paid McDaniel & Harvey for interest on their bond of $1,800......................................... 54 00

Sept. 25. Cash, Dr. to A. Hollingsworth for real estate, for twelve $\frac{51}{100}$ dollars due for rent ............................ 12 51

Dec. 12. A. Hollingsworth for real estate, Dr. to cash for sixty-three dollars paid interest on bond at Farmers' Bank....... 63 00

*Journal*, 1852 and 1853.

Jan. 8, 1853. A. Hollingsworth Dr. to cash for ninety dollars paid Savings Fund Society for interest on two bonds....... 90 00

Nov. 1, 1852. Achilles Hollingsworth for real estate, Dr. to cash for sixty-three dollars paid to the Wilmington Savings Fund Society for interest on his bond given to the Farmers' Bank of $2,100 .......................................... 63 00

March 19, 1850. Shop, Dr. to Achilles Hollingsworth, for real estate, for four hundred and fifty pounds of old shafting at one and a half cents.................................... 6 75

March 27. Cash, Dr. Achilles Hollingsworth (for real estate) for six dollars received of Thomas Tucker, being one half the rent which he agreed to pay for frame house on the R. Road up to the 25th inst. ................................... 6 00

| | |
|---|---|
| April 5. McCullough & Co. Dr. to A. Hollingsworth's real estate for 930 lb. furnace plate $\frac{15}{8}$ | 15 12 |
| Cash Dr. to A. Hollingsworth for real estate for five dollars, received of Charles Campbell for money he agreed to pay toward getting up plot of Hollingsworth & Teas' property, | $ 5 00 |
| Nov. 1, 1852. Cash Dr. to A. Hollingsworth for real estate thirty-seven $\frac{50}{100}$ dollars received for rent | $37 50 |

These items extracted from the books of the firm, of which the number of similar items must approximate nearly eighty or ninety, show the general character of entries, in respect to this real estate, contained in the books of the firm. Although it is proof that these entries are mostly in the handwriting of Achilles Hollingsworth; yet the books being subject to the inspection of all the partners, and the entries being made in the regular course of their business by parties having authority to make them, and the same not having been objected to by any of the partners during the existence of the copartnership, or during the life of James Rice or Achilles Hollingsworth, I feel myself bound to receive them as correctly made, consider-ing the lapse of time since they were made, and the entire absence of any proof that they should have been made other-' wise. Considering them as they stand, what do they mean? This is the important question.

The experts examined in behalf of the complainant say, in effect, that they mean the real estate belonged to the firm of Hollingsworth, Harvey, & Co.

The experts examined on behalf of the defendants say they mean that the real estate belonged to Achilles Hollings-worth. The science of bookkeeping, which has been invoked, has thus failed to illumine the path of our investigation. The fault, perhaps, is not so much the fault of science as of the partners in allowing the books to be so carelessly kept, and their true meaning to be left undetermined throughout the whole existence of the copartnership, and during their joint lives. I interpret these book entries to mean — and they are admissions in effect, by the copartners — that the real estate for which Achilles Hollingsworth held the sheriff's deed was his individual property, but that the 10 per cent paid to the

sheriff, of the purchase money, was paid out of the funds of the firm, and charged as a debt due by Achilles Hollingsworth, in consideration of such payment, to the firm; and that the different sums of money charged in the books as paid to the parties holding the bonds and mortgages, given by Achilles Hollingsworth, and substituted by him in lieu of the liens against said real estate, prior to the sheriff's sale, were likewise the funds of the firm, and charged as a personal debt against him. The above items in respect to rent and money received from sale of various articles connected with the real estate confirm this view of the subject. Whether the firm was ever reimbursed for the amount of funds so advanced by them, or so used by the said Achilles Hollingsworth, toward the payment for the real estate, I am unable to determine. I doubt if at this late day any means exist for determining that question. Death has forever sealed the lips of James Rice and Achilles Hollingsworth; and the rules of law forbid that Amor H. Harvey, the only living person who is able to shed any light upon these long-past transactions, should testify in the cause in respect to them. In my judgment, no resulting trust in favor of the complainant in this real estate has been proved. There is no sufficient proof of the actual payment of the purchase money or liability incurred for it as part of the original transaction of purchase on the part of the alleged *cestuis que trust*. There has been no express trust sufficiently proved, and there has been no agreement to purchase the real estate, by the firm, from Achilles Hollingsworth, since it was conveyed to him.

Here the case, so far as this court is concerned, substantially ends, because it has been manifest from the beginning that the important subject of controversy in the cause was the title to the real estate, and to the rents of the same, or compensation for its use and occupation. The bill, however, prays an account and a decree in behalf of the complainant, not only for his share of the rents and profits of the real estate, but for the amount of the memorandum checks, and also the amount of the private account due by the firm to James Rice.

The complainant, having failed to establish the equitable ownership by the firm of the real estate, of course is not entitled to an account of its rents and profits. There does not appear to be at the present time any property belonging to the firm of which James Rice was a partner, out of which the claim of the complainant, if it should be established, could be made. An account, if filed under a decree of the court in reference to the memorandum checks and private account of James Rice, could be of no service in ascertaining the amount of indebtedness of the firm to him by reason of the one or the other. They speak for themselves. An account could make them no plainer and no more certain. If such an account was ordered to be taken, it could be of no practical use. Those memorandum checks bear date 1851, 1852, and 1853. James Rice died on January 1, 1861. There is no proof that he ever attempted to collect the amount of those checks from Harvey & Hollingsworth during his lifetime, or claimed that they were due and owing by them to him. Their existence appears not to have been known to the complainant until about the month of May, 1866, and no attempt to collect them has ever been made by anyone prior to the institution of this suit.

The claim of the complainant, so far as it is based upon these memorandum checks and the private account of James Rice against the firm, would be barred at law; and equity, acting in analogy to the rules of law, does not favor old or stale demands. I cannot, therefore, decree according to the prayer of the complainant, in favor of the existing validity and binding obligation of either of these claims.

I must therefore order the bill to be dismissed, with costs.

NOTE.—The note appended to the case of Harvey *v.* Pennypacker, 4 Del. Ch. 489, by the editor of *Chancellor* Bates's decisions, is founded upon a misapprehension of the character of the proof in that case and in the present one, so far as the proofs tend to the establishment of a resulting trust. There was no material proof tending to establish a resulting trust to distinguish the one case from the other. There were a greater number of witnesses in the latter case than in the former; but the materiality of testimony does not depend upon the number of witnesses examined in a cause, but upon the character and relevancy of the facts to which they depose.